**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ERNEST LYTLE, Individually and as Representative of the ESTATE OF HEATHER LYTLE, DECEASED,** | ) | |
| **Plaintiff,** | ) | |
| **VS.** | ) | **Cause No. SA-07-CA-0195-XR** |
| **BEXAR COUNTY, TEXAS, BEXAR COUNTY SHERIFF'S OFFICE, ROBERT O'DONNELL, in his Individual Capacity,** | ) | |
| **Defendants.** | ) | |

## ORDER

On this date, the Court considered Defendants' Motion to Dismiss (Docket No. 26), as well as Plaintiff's Response (Docket No. 29). After having reviewed the pleadings and evidence therein, the Court **DENIES** in part, and **GRANTS** in part Defendants' Motion.

## Facts

This case comes before the Court following a tragic sequence of events that unfolded on February 28, 2006 in San Antonio, Texas. On that day, Defendant Robert O'Donnell ("O'Donnell"), a Deputy for Defendant Bexar County Sheriff's Office, was in search of a Ford Taurus. O'Donnell located a Ford Taurus ("suspect vehicle") matching the description, followed the suspect vehicle, and observed the suspect vehicle violate a traffic law. Thereafter, O'Donnell activated his emergency lights, and the suspect vehicle, driven by Charles Judy, not only failed to stop, but

accelerated away from O'Donnell's patrol car. Subsequently, the suspect vehicle, in which 15-year old Heather Lytle was one of three passengers, attempted to turn onto an adjacent street, where it ran into another vehicle ("bystander vehicle"). O'Donnell pulled his patrol car behind the suspect vehicle. The suspect vehicle reversed, before switching gears and fleeing away.[1] At some point during the confusion that followed the suspect vehicle's collision with the bystander vehicle, O'Donnell discharged his service weapon more than one time.[2] One of the bullets from O'Donnell's weapon penetrated the suspect vehicle and struck Heather Lytle, who died from the wound she received.

## Analysis

### A. Motion Decided as Motion for Summary Judgment

Although styled as a motion to dismiss, which would implicate analysis under Rule 12(b)(6), Defendants' motion incorporates evidence outside of the pleadings. This Court, having considered the evidence presented by both Defendants and Plaintiff, disposes of the motion as provided in Rule 56.[3]

### B. Summary Judgment Standard

The Federal Rules provide that summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

---

[1] The parties dispute whether the suspect vehicle reversed into Deputy O'Donnell's vehicle before speeding off, or just reversed toward him without making contact.

[2] The parties strenuously disagree as to whether O'Donnell fired before or after the suspect vehicle began to flee again.

[3] If on a 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b).

to any material fact and that the movant is entitled to a judgment as a matter of law."[4] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[5] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[6] The trial court must resolve all reasonable doubts about the facts in favor of the nonmovant.[7]

**Plaintiff's Allegations**

By his First Amended Complaint (Docket No. 15), Plaintiff alleges four separate Counts against various combinations of the Defendants. Count I alleges the use of excessive force in violation of Fourth Amendment right to be free from unreasonable seizure by O'Donnell, in his individual capacity, Bexar County, Texas, and the Bexar County Sheriff's Office.[8] Count II alleges violation of Heather Lytle's constitutional rights by Bexar County, Texas and the Bexar County Sheriff's Office pursuant to a custom or policy of these two governmental entities.[9] Count III alleges violation of Heather Lytle's constitutional rights by Bexar County, Texas and the Bexar County

---

[4] FED. R. CIV. P. 56(c).

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[6] FED. R. CIV. P. 56(e)(2).

[7] *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

[8] Docket No. 15 at 3.

[9] *Id.* at 4.

Sheriff's Office due to inadequate training.[10] Count IV alleges that Defendants are liable pursuant to the Texas Tort Claims Act ("TTCA") due to the negligent use of tangible personal property.[11]

**Count I–Excessive Force**

**A. Defense of Qualified Immunity**

Defendant O'Donnell asserts qualified immunity as a defense to Plaintiff's claim of excessive force. *Saucier v. Katz* provides the analytical structure in which a claim of qualified immunity should be considered.[12] According to *Saucier*, the initial inquiry for the Court is whether "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[13] If a constitutional "violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."[14] It is important to note that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."[15] Indeed, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[16]

Following the *Saucier* structure, the first step for the Court is to determine whether Plaintiff

---

[10] *Id*.

[11] *Id*. at 5.

[12] 533 U.S. 194 (2001).

[13] *Id*. at 201.

[14] *Id*.

[15] *Id*.

[16] *Id*. at 202.

has pled facts that, if true, would establish that Defendant O'Donnell violated a constitutional right. Plaintiff alleges the actions of Defendant O'Donnell constituted excessive force in violation of Heather Lytle's Fourth Amendment rights to be secure against unreasonable searches and seizures. According to the Supreme Court in *Graham v. Connor*, in evaluating, for Fourth Amendment purposes, the reasonableness of a particular use of force, the Court must pay "careful attention to the facts and circumstances . . . including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[17]

According to Plaintiff's First Amended Complaint, O'Donnell violated Heather Lytle's Fourth Amendment rights when he allegedly utilized excessive force by shooting at the suspect vehicle as that vehicle was attempting to flee.[18] It is unquestionable that the use of deadly force by O'Donnell implicated Heather Lytle's Fourth Amendment constitutional right to be free from unreasonable seizure.

The inquiry next turns to whether the rights allegedly violated were clearly established. In other words, would it be "clear to a reasonable officer" that the Defendant's conduct was unlawful in the situation he confronted.[19] As the Supreme Court has noted, "it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts. . . If the officer's mistake as to what the law requires is reasonable . . . the officer is

---

[17] 490 US 386, 396 (1989).

[18] Docket No. 15 at 3.

[19] *Saucier*, 533 US at 202.

entitled to the immunity defense."[20]

To address this issue, it must be determined whether, given the totality of the circumstances, a reasonable officer confronted with the same situation as O'Donnell would recognize his actions were unlawful. The Supreme Court has made it clear that the use of deadly force to prevent escape is not unreasonable when an officer has probable cause to believe the suspect presents a threat of serious harm to the officer or others.[21] This Court recognizes the deference due to police officers, who must sometimes make instantaneous decisions which entail serious consequences. The Fifth Circuit has provided the following advice to courts evaluating such situations:

> "[Courts] must avoid substituting [their] personal notions of proper police procedure for the instantaneous decision of the officer at the scene. [Courts] must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure."[22]

According to Plaintiff's pleadings and evidence, the suspect vehicle was moving rapidly away from O'Donnell when he fired his weapon.[23] In fact, construing the evidence most favorably toward Plaintiff, the suspect vehicle was possibly "three or four houses" away from O'Donnell when the shots were fired.[24] To the contrary, Defendant O'Donnell contends the suspect vehicle was either

---

[20] *Id*. at 205.

[21] *Garner*, 471 U.S. at 11.

[22] *Stroik v. Ponsetti*, 35 F.3d 155, 158-59 (5th Cir. 1994) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)).

[23] Docket No. 15 at 3. *See also*, Docket No. 29 at 2.

[24] Docket No. 29 at 2, n1.

moving towards him, or had just impacted his patrol car when he fired the shots.[25]

If the facts are as Defendant has alleged, qualified immunity would attach to Deputy O'Donnell's actions, and Plaintiff's suit would be barred. Because this is a summary judgment analysis, however, a genuine issue of material fact exists regarding the direction and distance the suspect vehicle had traveled when Deputy O'Donnell discharged his weapon. Thus, this factual dispute must be resolved before the trier of fact. Because a determination of qualified immunity hinges on the resolution of this factual dispute, the Court **DENIES** O'Donnell's Motion to Dismiss (Docket No. 26) Count I.

**Count II–Official Custom or Policy**

Under § 1983, to recover from a governmental entity based on the theory of official policy or custom, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[26]

The first prong, the existence of a custom or policy, can be established in two ways. First, it can be shown by a policy statement, regulation, or official position adopted by policymakers that resulted in the plaintiff's injury.[27] Plaintiff does not specify any policy statement, regulation or official position. Accordingly, it appears that Plaintiff relies on the second method, which requires showing

> [a] persistent, widespread practice of city officials or employees which, although not

---

[25] Docket No. 26 at 5-7.

[26] *Castro v. McCord*, 2007 WL 4467566 at *4 (5th Cir. 2007)(citations omitted).

[27] *Id.*

> authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."[28]

However, "[a]ctions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy."[29]

Plaintiff's First Amended Complaint makes the conclusory allegation that an official policy or custom of Bexar County, Texas and the Bexar County Sheriff's Office was the cause in fact and proximate cause of the supposed deprivation of Heather Lytle's constitutional rights.[30] Summary judgment can be supported by statements of fact in a pleading, but only where such a pleading is verified.[31] However, Plaintiff's First Amended Complaint is not verified. Accordingly, the factual allegations found in Plaintiff's First Amended Complaint are not competent summary judgment proof.[32]

Additionally, Plaintiff's Response to Defendants' Motion to Dismiss asks "the Court to take judicial notice of the pleadings and claims" made in a pending case which allegedly involves an

---

[28] *Id.*

[29] *Id* (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc)).

[30] Docket No. 15 at 4.

[31] *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987)(citations omitted).

[32] See *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's [summary judgment] burden.").

incident similar to the one at bar.[33] As in the instant case, the pleadings in the case Plaintiff references are not verified, making them incompetent summary judgment proof.

Plaintiff has wholly failed to provide competent summary judgment evidence on this issue of custom, policy or ratification. As such, the Court **GRANTS** Defendants' Motion to Dismiss Count II.

**Count III–Inadequate Training**

The Court is of the opinion that Defendants inadequately briefed the issue presented in Count III, and failed to produce evidence supporting their contentions. Plaintiff alleges discovery is ongoing with regards to Deputy O'Donnell's training file.[34] Because discovery is not yet complete, the Court **DENIES** Defendants' Motion to Dismiss Count III, **WITHOUT PREJUDICE**. The Court invites the Parties to readdress the issues concerning Count III once discovery is complete.

**Count IV–Negligence**

The TTCA provides that a municipality, such as a county government, is liable for death resulting from the negligent acts of the governmental unit's employees acting within the scope of their employment when such injuries result from the use of tangible personal property.[35] When such a situation occurs, the governmental unit has waived its right to sovereign immunity. However, the TTCA provides for an exception from waiver of sovereign immunity when the act complained of is an intentional tort.[36] Therefore, if the facts construed favorably towards the Plaintiff show that

---

[33] Docket No. 29 at 15.

[34] *Id.*

[35] TEX. CIV. PRAC. & REM CODE § 101.021.

[36] TEX. CIV. PRAC. & REM CODE § 101.057(2).

Deputy O'Donnell's act of discharging his weapon was unintentional, Bexar County, Texas and Bexar County Sheriff's Office have waived sovereign immunity.

Plaintiff suggests that Deputy O'Donnell's discharge of his weapon was not intentional because he did not specifically intend to injure Heather Lytle.[37] Plaintiff proposes that Deputy O'Donnell's actions were not intentional because he pointed his weapon at the suspect vehicle, not intending to shoot Heather, and that he did not shoot at any particular individual.[38] Plaintiff cites to *Pineda v. City of Houston*[39] and *Escobar v. City of Houston*[40] to support his theory that the element of intent is determined by whether the actor intends to shoot the victim and whether it is reasonably foreseeable a specific victim would be shot.[41]

Plaintiff incorrectly argues that the requisite intent is to injure a specific person. The Texas Supreme Court has stated "[t]he fundamental difference between negligent injury . . . and intentional injury is the specific intent to inflict *injury*."[42] In fact, "intent to injure can be inferred from the actors' conduct."[43] "Intent is established when facts demonstrate that the actor desired to cause consequences of his act, or that he believes that the consequences are substantially certain to result

---

[37] Docket No. 29 at 12-14.

[38] *Id*.

[39] 175 S.W.3d 276, 283 (Tex. App.–Houston [1st Dist.] 2004, no pet.).

[40] 2007 WL 2900581, at *43 (S.D. Tex. Sept. 29, 2007).

[41] Docket No. 29 at 11.

[42] *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985) (emphasis added).

[43] *Pineda*, 175 S.W.3d at 283.

from it."[44] In finding the act complained of was intentional, the *Pineda* Court noted that the Plaintiff did "not allege an accidental shooting, such as the inadvertent discharge of pistol."[45] This language indicates the court noted a distinction between an unintentional discharge and an intentional discharge. The distinction is that a discharge of a weapon caused by accident or inadvertence is an unintentional act; whereas the deliberate discharge of a weapon is an intentional act.

The Court must decide whether Deputy O'Donnell intended to cause injury when he discharged his weapon. For the purposes of our inquiry, the timing of Deputy O'Donnell's shots is immaterial. Evaluating the evidence favorably towards the Plaintiff, it is undisputed that Deputy O'Donnell intentionally discharged his weapon. He discharged his weapon on his own volition, and no other factors contributed to his firing of the weapon. The specific intent to cause injury is limited to the intent to cause injury, and does not include intent to injure a specific person. It would prove to be too high of a burden if the intent needed to prove an intentional tort was the intent to not only cause injury, but to inflict that injury on a specific person. The fact that Deputy O'Donnell intended to shoot his weapon, with the intent to cause injury, satisfies the intent requirement for an intentional act.

Because the Court finds the actions of Deputy O'Donnell were intentional, the Court **GRANTS** Defendant's Motion to Dismiss Count IV as to all Defendants.

**Conclusion**

For the foregoing reasons, the Court: (1) **DENIES** O'Donnell's Motion to Dismiss Count I; (2) **GRANTS** Defendants' Motion to Dismiss Count II; (3) **DENIES** Defendants' Motion to

---

[44] *Id*. at 283 n. 7 (citing RESTATEMENT 2d OF TORTS § 8(a) (1965)).

[45] *Id*. at 283.

Dismiss Count III, subject to re-urging at the completion of discovery; and (4) **GRANTS** Defendants' Motion to Dismiss Count IV as to all Defendants.

It is so ORDERED.

SIGNED this 14th day of February, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE